Eric Victor **ESTEVES**, Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 01–89–00775–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 5, 1993.

*Stewart Title Guar. Co.*, 822 S.W.2d at 12. One, but not both, of the statements is correct.

Eric Victor Esteves, pro se.

William C. Hodge, Robert J. Di Vito, Huntsville, for appellant.

John B. Holmes, Ernest Davila, Leslie Brock, Houston, for appellee.

Before O'CONNOR, MIRABAL and SAM H. BASS[1], JJ.

## OPINION ON REMAND FROM TEXAS COURT OF CRIMINAL APPEALS

O'CONNOR, Justice.

On remand from the Court of Criminal Appeals, we review the appellant's *Batson* claims,[2] and reverse and remand for new trial.

Eric Victor Esteves, the appellant, was convicted by a jury of aggravated robbery and sentenced to life imprisonment. The conviction was affirmed by this Court. *Esteves v. State,* 845 S.W.2d 291 (Tex.App.— Houston [1st District] 1992). The Court of Criminal Appeals granted the appellant's petition, vacated the judgment of this Court, and remanded for a new factual determination of the appellant's *Batson* claim. *Esteves v. State,* 849 S.W.2d 822 (Tex.Crim.App.1993). The court instructed us to review all the relevant evidence, *id.* at 824–25, as discussed by the dissent.

■ In point of error one, the appellant argues he was denied a fair trial because the State peremptorily struck prospective jurors because of their race. The appellant complains that the State used its peremptory strikes to remove prospective jurors who were African–American from the jury. Because the State's overall conduct in jury selection is relevant in proving discrimination, we must review the entire voir dire, not just the State's explanation. *Whitsey v. State,* 796 S.W.2d 707, 726 (Tex.Crim. App.1989).

### Cynthia Ross

During the voir dire, the prosecutor did not ask Ross any questions. At the *Batson* hearing, the prosecutor explained that Ross had stared at her from the moment she entered the courtroom; that no other

1. The Honorable Sam Bass, retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (peremptory challenges may not be used in racially discriminatory manner).

member stared at her to that degree. The prosecutor noticed Ross worked at Target, where the prosecutor shops. The prosecutor explained:

> I shop [at Target's], so I don't know if she recognized me and that's why she was staring at me or if she's been a witness or a member of the Defendant's family before. But based on that, I did not feel like she could be a good juror in one of my cases.

We must deal with the prosecutor's two explanations for striking Ross: (1) the prosecutor thought Ross might be either a witness or a member of the appellant's family; and (2) Ross stared at the prosecutor. In considering the two explanations, we must also consider that the prosecutor did not ask Ross any questions.

Recall that *Keeton* instructs us that the trial judge cannot merely accept the reasons given by the prosecutor at face value; the judge must consider whether the facially neutral explanations are contrived to avoid admitting discrimination. *Keeton v. State*, 749 S.W.2d 861, 868 (Tex.Crim.App. 1988). *Keeton* identified two factors that weigh heavily against the legitimacy of a racially-neutral explanation: no examination or only a perfunctory examination of the prospective juror, and a reason given for the challenge that is unrelated to the facts of the case. *Id.* at 866.

 The prosecutor's first explanation for the strike seemed to be that Ross might have been a witness to the crime or a member of the appellant's family. Nothing in this record supports the prosecutor's suggestion that Ross might have been a witness or might be related to the appellant. If the prosecutor had questioned Ross and confirmed the suspicion that Ross was either a witness or was a member of the appellant's family, the prosecutor could have struck her for cause. If a prosecutor makes an assumption about a prospective juror but does not question the prospective juror to verify the assumption, it is some indication that the strike was not race-neutral. *Woods v. State*, 801 S.W.2d 932, 936–37 (Tex.App.—Austin 1990, pet. ref'd) (the prosecutor said he struck the prospective

juror because he had a punk rock haircut, which he associated with liberals, radicals, and the drug culture, but did not question the prospective juror to verify his assumption).

We hold that the prosecutor's reason for challenge—that Ross might be a witness or a member of the appellant's family—is not supported by the record and is unrelated to the facts elicited in voir dire. *See Keeton*, 749 S.W.2d at 868.

Once we reject the "witness or member of the family" reason to strike Ross, the only reason left is that the prosecutor said Ross stared at her. Most alert prospective jurors watch the prosecutor during the prosecutor's voir dire. If the prosecutor had said Ross seemed hostile to her, and had verified it with questions, that might have been a reason to strike Ross. But, staring alone is not any justification. *See Woods*, 801 S.W.2d at 937 (prosecutor's explanation that prospective juror did not appear interested and did not react as other prospective jurors, coupled with abbreviated questioning of the prospective juror, was not race-neutral explanation).

We hold that the sum of the two reasons—the "witness or relative" and the staring—in addition to the lack of questioning amounts to failure to provide a race-neutral reason to strike Ross.

We sustain the *Batson* point on Ross.

### Ruby Reed

The prosecutor said she struck Reed because she was not responsive to the questions the prosecutor asked the panel and she yawned during voir dire. The prosecutor did not ask Reed any direct questions. The defense attorney identified two white jurors who had yawned during voir dire, yet had not been struck by the State.

 When the prosecutor offers race-neutral explanations for strikes, it becomes the defendant's burden to persuade the court that such challenges were racially motivated. *Lewis v. State*, 815 S.W.2d 560, 563 (Tex.Crim.App.1991); *Jones v. State*, 781 S.W.2d 415, 417–18 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). As stated

earlier, one factor that weighs against the State, particularly when the charge of pretext excuse is raised, is that the State did not pose any individual questions to the challenged prospective juror. *Keeton*, 749 S.W.2d at 868. Here, the State did not question the prospective juror and the defense pointed out another white juror who was not struck for the same behavior.

In *Lewis v. State*, 779 S.W.2d 449, 455 (Tex.App.—Tyler 1989, no pet.), the prosecutor said he struck an African–American prospective juror who wore a mustache. The prosecutor admitted that he regularly struck prospective jurors with mustaches or beards. The record revealed that the prosecutor did not strike a white juror with a beard. *Id.* The court held the explanation for the strike was but a sham or pretext to avoid admitting racial discrimination. *Id.* Hence, the court concluded, the explanation was not sufficient to rebut the presumption of racial discrimination. *Id.*

We sustain the *Batson* challenge on Reed.

### Bernita Harrison

■ The prosecutor said she struck Harrison because she has an uncle who is serving time after he was convicted for sexual assault of a child. In response to that reason, the appellant's lawyer pointed out that the prosecutor did not strike a white juror who had a nephew in prison for armed robbery. In reply, the prosecutor explained she did not strike the white juror because the juror explained he was not close to his nephew and had completely forgotten about his nephew's Louisiana conviction until he was questioned during voir dire.

There are two things that are noteworthy about the prosecutor's justification: (1) the white juror volunteered the information that he was not close to his nephew; and (2) the prosecutor could have asked Harrison if she was close to her uncle, but did not. In other respects, the two prospective jurors seemed to give a similar response— they did not know if their relative had been treated fairly.

The prosecutor's conversation with the prospective jurors should be contrasted.

After the white juror remembered he had a relative who had been charged with an offense, the following exchange took place:

White juror: Something just occurred to me. It happened a long time ago. A nephew had an armed robbery conviction a long time ago, in New Orleans.

Prosecutor: Do you feel like your nephew was treated fairly by the system? Do you have an opinion about it?

White juror: As far as I know. I really wasn't that close to him.

Prosecutor: Is there anything about that that would cause you not to be fair in this case?

White juror: No.

A few minutes later, the prosecutor interrogated Harrison on the same subject.

Prosecutor: Ms. Harrison?

Harrison: A relative.

Prosecutor: Was it someone in your immediate family?

Harrison: An uncle.

Prosecutor: Do you know what kind of case it was?

Harrison: I think it was child molesting.

Prosecutor: Would that cause you not to be fair in this case? Do you think your uncle was treated fairly by the DA's office or by the court system?

Harrison: Well, I don't know. I think he's still in jail.

Nothing in this record supports the prosecutor's explanation that she struck Harrison because she was close to her uncle. In fact, by saying she did not know if her uncle was still in jail ("I think he is still in jail"), it shows that she probably was not close to him.

We sustain the *Batson* challenge on Harrison and hold that the prosecutor's reason for striking her evidenced disparate treatment of the prospective jurors because she did not strike the white juror. *See Keeton*, 749 S.W.2d at 868; *Miller–El v. State*, 790 S.W.2d 351, 357 (Tex.App.—Dallas 1990, pet. ref'd) (when prosecutor struck an African–American for the stated reason that she had only recently held her job, but did not strike a white juror for the same reason, the excuse constituted a sham or pre-

text); *Vann v. State*, 788 S.W.2d 899, 905 (Tex.App.—Dallas 1990, pet. ref'd) (prosecutor's reason for striking two African–American men, that they were conservative, was a sham because he did not strike conservative white men).

We sustain the appellant's point of error one as to Ross, Reed, and Harrison, reverse the judgment, and remand for a new trial.

We do not find it necessary to address the appellant's other points of error.