**Fredde Lopez CUESTAS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–95–358–CR.**

Court of Appeals of Texas,
Fort Worth.

Oct. 17, 1996.

Charles A. Friedman, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, David M. Curl, and Bill Durkin, Assistant Criminal District Attorneys, Fort Worth, for appellee.

Before DAY, DAUPHINOT and RICHARDS, JJ.

## OPINION

RICHARDS, Justice.

During jury selection in Appellant Fredde Lopez Cuestas's trial for delivery of a controlled substance, the State exercised a peremptory strike on an African American venireperson. Cuestas objected to the strike on the basis of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The State responded that it struck the venireperson on the race-neutral grounds that he was "liberal." Cuestas contends the State's questioning of the venireperson did not support the conclusion that he was "liberal."

Cuestas appeals his conviction and thirty-year sentence. In his sole point of error, Cuestas argues the trial court erred in overruling his *Batson* objection. We affirm.

## BACKGROUND

Cuestas was indicted for delivery of a controlled substance. Before trial, he elected to have the judge assess punishment if he was convicted.

After voir dire, both sides exercised their peremptory strikes. Cuestas's attorney objected to the strikes against venirepersons 20, 21, and 26; all of whom were African Americans. Venireperson number 20, S.W., is the subject of Cuestas's appeal.

In response to a question on his jury questionnaire, S.W. indicated that he was "Politically Liberal." In addition, in response to the question asking whether he knew any attorneys or investigators working in criminal law, S.W. indicated that he knew Glenn Lewis. Finally, S.W. indicated that he thought the main goal of the criminal justice system should be "Rehabilitation—to reform the offender."

After examining the statement of facts of the voir dire from Cuestas's trial, we can only find one relevant passage regarding S.W.:

[PROSECUTOR]: You know Glenn Lewis?

[PROSPECTIVE JUROR S.W.]: Yes.

[PROSECUTOR]: And I would like to ask you about that, please. Glenn Lewis is a defense attorney here in town and he's a state representative now.

[PROSPECTIVE JUROR S.W.]: Right.

[PROSECUTOR]: I was wondering how you know him.

[PROSPECTIVE JUROR S.W.]: We went to school together. We were classmates.

[PROSECUTOR]: Okay. And how well—I mean, I guess, how close is your friendship with him?

[PROSPECTIVE JUROR S.W.]: He's a friend.

[PROSECUTOR]: Yeah. Okay. Boy, he's tried a lot of criminal cases. Does he ever talk about his criminal cases with you?

[PROSPECTIVE JUROR S.W.]: No. We don't get into work. No, sir.

[PROSECUTOR]: Okay. Would the fact that you went to school with him and he's a good friend, would that affect your ability to fairly decide a criminal case?

[PROSPECTIVE JUROR S.W.]: No, it wouldn't.

Outside the presence of the venire, the State gave the following response to Cuestas's *Batson* motion:

[PROSECUTOR]: Okay. Now, [Defense Counsel's] motion was that—that I struck blacks because they're black.

[DEFENSE COUNSEL]: Yes.

[PROSECUTOR]: And here's my response. I didn't strike them because they're black. I struck them because they're liberal. Every one of them is a liberal. And contrary to [Defense Counsel's] position that I don't like blacks, no, I don't like liberals. And let's take it piece by piece.

Number one, the first person who is—who—who—first person he's talking about is number 20, [S.W.].

. . . .

[PROSECUTOR]: Yeah, he's a liberal. I also struck him for—that's the—the main reason I struck him. Also tell you that— the things that did not go in his favor were he favors rehabilitation.

And I know the judge is going to assess punishment, if we get there, but that just reinforces his liberal position, as far as I'm concerned.

Additionally, I—and I think he's a great guy, but he's also a very liberal guy. And I think that anybody that knows—is lifelong friends with Glenn Lewis is going to be very, very liberal.

The court overruled Cuestas's objection.

## ANALYSIS

■ We review the trial court's denial of Cuestas's *Batson* challenge under a clearly erroneous standard to determine whether it is adequately supported by the record. *Salazar v. State*, 818 S.W.2d 405, 408 (Tex. Crim.App.1991). In doing so, we must examine the evidence in the light most favorable to the trial judge's rulings. *Id.*

■ The fact that venirepersons are "liberal" is a race-neutral explanation for the use of a peremptory strike.[1] *Lee v. State*, 860 S.W.2d 582, 585 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd); *Henderson v. State*, 816 S.W.2d 845, 848 (Tex.App.—Fort Worth 1991, no pet.). Therefore, the only question for us to review is whether the State's conclusion that S.W. was a "liberal" was adequately supported by the record. We find that it was.

■ S.W. freely admitted on his jury questionnaire that he was "liberal." This case is nearly identical to *Henderson*, where we upheld a peremptory strike based on the race-neutral factor that the venireperson was liberal because the venireperson "clearly indicated that she was . . . liberal." *Id.* Thus, the record supports the State's conclusion that S.W. was "liberal." Accordingly, we find that the trial court did not clearly err by accepting the State's explanation.[2]

1. At the *Batson* hearing, Cuestas's attorney argued that "most members of minorities are, in fact, liberal. So, that's the—that and being a minority are the same. And that's not a racially neutral explanation as to why they should be stricken from the jury." Cuestas's counsel does not advance this contention on appeal.

2. We note, however, that S.W.'s friendship with Glenn Lewis is not a relevant factor in determining whether S.W. is "liberal." Were this the case where the *only* evidence of S.W.'s being liberal was that he was "friends" and "classmates" with Glenn Lewis, we would reverse.

When the State strikes a juror on a basis that cannot easily or objectively be determined by the reviewing court, that basis must be substantiated by something on the record other than the prosecutor's statement. *Yarborough v. State*, 868 S.W.2d 913, 914 (Tex.App.—Fort Worth 1994, pet. granted); *Roberson v. State*, 866 S.W.2d 259, 261 (Tex.App.—Fort Worth 1993, no pet.). Such substantiating evidence can be an admission by opposing counsel, a finding by the trial court, or an admission by a panel member. *Yarborough*, 868 S.W.2d at 913; *Roberson*, 866 S.W.2d at

261. Being politically liberal is just such a basis. Further, if a prosecutor makes an assumption about a prospective juror, but does not question that prospective juror to verify the assumption, it is some indication that the strike was not race-neutral. *Esteves v. State*, 859 S.W.2d 613, 615 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd).

Faced with only the admission that he was "friends" and "classmates" with Glenn Lewis, we would not be able to say that the record supported the State's assertion that S.W. was "liberal." There is nothing in the record indicating that Glenn Lewis himself is liberal. *See Vargas v. State*, 838 S.W.2d 552, 556 (Tex.Crim. App.1992) (not proper for appellate court to rely on information that was not admitted as evidence at *Batson* hearing). Further, even if the record indicated that Glenn Lewis were liberal, we could still not attribute that characteristic to individual members of the group "friends of Glenn Lewis." *See Emerson v. State*, 851 S.W.2d 269, 273 (Tex.Crim.App.1993) (*Batson* prohibits strike based on group bias where group trait not shown to apply to specific juror). Were this the case, it would have behooved the State to question S.W. further regarding his political views. *See Esteves*, 859 S.W.2d at 615.

Cuestas's point of error is overruled, and we affirm the judgment of the trial court.